UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| TONYA COX, o/b/o | ) | |
| DANIEL J. COX, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:15CV00051 ACL |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Daniel J. Cox brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of his application for Disability Insurance Benefits under Title II of the Social Security Act and Supplemental Security Income under Title XVI of the Act.

An Administrative Law Judge (ALJ) found that, despite Wright's multiple severe impairments, he was not disabled as he had the residual functional capacity ("RFC") to perform the requirements of occupations such as merchandise worker, electrical sub assembler, and garment sorter, which exist in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

### I. Procedural History

On January 6, 2009, Cox filed applications for Disability Insurance Benefits (DIB) (Tr.

226-32) and Supplemental Security Income (SSI), claiming that he became unable to work due to his disabling condition on August 9, 2008 (Tr. 11). Cox's claims were denied initially. (Tr. 111-12.) Following an administrative hearing, Cox's claims were denied in a written opinion by an ALJ, dated June 4, 2010. (Tr. 114-29.)

Cox then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration (SSA). (Tr. 181.) On October 24, 2011, the Appeals Council vacated the ALJ's decision and remanded the case for resolution of the following issues: (1) the hearing decision did not specifically evaluate Cox's seizure disorder at step 3 of the sequential evaluation process despite reports of treating neurologist Dr. Clara Applegate that Cox was having 1-3 generalized tonic clonic[1] (grand mal) seizures a week, Cox's history of smaller "blackout" seizures which occur up to several times day, and Dr. Applegate's May 2010 note indicating that Cox's epilepsy is intractable despite two medications and evidence of good compliance; and (2) the decision found that Cox's subjective complaints were not fully credible but did not provide sufficient rationale for this finding. (Tr. 131-32.) The Appeals Council instructed the ALJ on remand to: obtain additional evidence concerning Cox's seizure disorder, including, if warranted, evidence from a medical expert regarding whether Cox's impairment meets or equals a listed impairment; further evaluate Cox's subjective complaints; reconsider Cox's residual functional capacity; and obtain supplemental evidence from a vocational expert. (Tr. 132-33.)

A second administrative hearing was held on remand, at which a vocational expert

_____

[1]A generalized tonic-clonic, or grand mal, seizure is a seizure characterized by the sudden onset of tonic contraction of the muscles often associated with a cry or moan, and frequently resulting in a fall to the ground. The tonic phase of the seizure gradually give way to clonic convulsive movements occurring bilaterally and synchronously before slowing and eventually stopping, followed by a variable period of unconsciousness and gradual recovery. *Stedman's Medical Dictionary*, 1744 (28th Ed. 2006).

testified. (Tr. 32-73.) On December 18, 2012, a different ALJ issued an unfavorable decision. (Tr. 11-25.) Cox filed a request for review with the Appeals Council (Tr. 5), which was denied on December 5, 2013 (Tr. 1-3). Thus, the decision of the second ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In the instant action, Cox first claims that the ALJ erred in "failing to develop the record consistent with the dictates of remand provided by the Appeals Council in not obtaining the services of a medical expert to evaluate the severity, frequency, and resulting vocational impact of the claimant's seizure disorder." (Doc. 12 at 12.) Cox next argues that the ALJ erred "at step three of the sequential evaluation process in not finding that Daniel meets the 11.03 epilepsy listing or at the very least is a medical equivalent." *Id.* at 14.

## II. Applicable Law

### II.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence

on the record as a whole, the Court must review the entire administrative record and consider:

1.     The credibility findings made by the ALJ.

2.     The plaintiff's vocational factors.

3.     The medical evidence from treating and consulting physicians.

4.     The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5.     Any corroboration by third parties of the plaintiff's impairments.

6.     The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted).   The Court must also consider any evidence which fairly detracts from the Commissioner's decision.   *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999).   However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole.   *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)).   "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision."   *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted).   *See also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

**II.B.    Determination of Disability**

To be eligible for DIB and SSI under the Social Security Act, a plaintiff must prove that she is disabled.  *Pearsall v. Massanari*, 274 F.3d at 1217; *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992).    The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."    42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).    An individual will be declared disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."    42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The SSA Commissioner has established a five-step process for determining whether a person is disabled.    *See* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 141-42 (1987); *Fines v. Apfel*, 149 F.3d 893, 894-95 (8th Cir. 1998).    First, it is determined whether the claimant is currently engaged in "substantial gainful employment."    If the claimant is, disability benefits must be denied.    *See* 20 C.F.R. §§ 404.1520, 416.920 (b).    Step two requires a determination of whether the claimant suffers from a medically severe impairment or combination of impairments.    *See* 20 C.F.R §§ 404.1520 (c), 416.920 (c).    To qualify as severe, the impairment must significantly limit the claimant's mental or physical ability to do "basic work activities."    *Id.*    Age, education and work experience of a claimant are not considered in making the "severity" determination.    *See id.*

If the impairment is severe, the next issue is whether the impairment is equivalent to one of the listed impairments that the Commissioner accepts as sufficiently severe to preclude substantial gainful employment. *See* 20 C.F.R. §§ 404.1520 (d), 416.920 (d). This listing is found in Appendix One to 20 C.F.R. 404. 20 C.F.R. pt. 404, subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be impaired. *See* 20 C.F.R. §§ 404.1520 (d), 416.920 (d). If it does not, however, the evaluation proceeds to the next step which requires an inquiry regarding whether the impairment prevents the claimant from performing his or her past work. *See* 20 C.F.R. § 404.1520 (e), 416.920 (e).

If the claimant is able to perform the previous work, in consideration of the claimant's RFC and the physical and mental demands of the past work, the claimant is not disabled. *See id.* If the claimant cannot perform his previous work, the final step involves a determination of whether the claimant is able to perform other work in the national economy taking into consideration the claimant's residual functional capacity, age, education and work experience. *See* 20 C.F.R. §§ 404.1520 (f), 416.920 (f). The claimant is entitled to disability benefits only if he is not able to perform any other work. *See id.* Throughout this process, the burden remains upon the claimant until he adequately demonstrates an inability to perform previous work, at which time the burden shifts to the Commissioner to demonstrate the claimant's ability to perform other work. *See Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a (b) (1),

416.920a (b) (1).   If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a (b) (2), 416.920a (b) (2).   The Commissioner must then rate the degree of functional loss resulting from the impairments in four areas deemed essential to work:   activities of daily living, social functioning, concentration, and persistence or pace.   *See* 20 C.F.R. §§ 404.1520a (b) (3), 416.920a (b) (3).   Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities.   *See id.*   Next, the Commissioner must determine the severity of the impairment based on those ratings.   *See* 20 C.F.R. §§ 404.1520a (c), 416.920a (c).   If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder.   *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2).   This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders.   *See id.*   If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare a residual functional capacity (RFC) assessment.   *See* 20 C.F.R. §§ 404.1520a (c)(3), 416.920a (c)(3).

### III.   The ALJ's Determination

The ALJ found that Cox met the earnings requirements of the Social Security Act through March 31, 2009.   (Tr. 13.)   He also found that Cox has not engaged in substantial gainful activity since August 9, 2008, the alleged onset date.   *Id*.

In addition, the ALJ concluded that Cox had several severe impairments, including: a seizure disorder, a mood disorder variously described in the record as major depression versus bipolar disorder, and a history of polysubstance abuse; but no impairment or combination of

impairments that meets or equals in severity the requirements of any impairment listed in 20

C.F.R. Part 404, Subpart P, Appendix 1.   (Tr. 14-15.)

As to Cox's RFC, the ALJ stated:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is unable to climb ladders, ropes, and scaffolds.   He must work in a temperature-controlled environment.   The claimant must avoid concentrated exposure to pulmonary irritants and unprotected heights.

(Tr. 16.)

In formulating Cox's RFC, the ALJ discussed the opinions of treating neurologist Dr.

Applegate.   (Tr. 21-22.)   The ALJ assigned no weight to Dr. Applegate's most recent opinions

supporting Cox's application for disability due to his seizure disorder, finding that they were

inconsistent with Dr. Applegate's own treatment notes and the other evidence of record.   (Tr. 21.)

As to the manner in which the ALJ assessed the credibility of Cox's subjective complaints,

the ALJ reviewed the *Polaski* factors and other considerations that are required under the law.

(Tr. 18-21.)   Overall, the ALJ found that Cox's allegations of total disability were not fully

credible.   (Tr. 20.)

The ALJ further found that Cox has no past relevant work.   (Tr. 24.)   He also concluded,

based on vocational expert testimony, that there are jobs that exist in significant numbers in the

national economy that the claimant can perform.   *Id.*

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits filed on January 5, 2009, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.
>
> Based on the application for supplemental security income filed on January 5, 2009, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

(Tr. 25.)

## IV.   Discussion

As noted above, Cox raises two claims in this action for judicial review of the ALJ's decision denying benefits.   The undersigned will discuss Cox's claims in turn.

### IV.A.   Development of the Record

Cox argues that the ALJ erred in failing to develop the record consistent with the dictates of remand provided by the Appeals Council.   Specifically, Cox contends that the ALJ should have obtained the services of a medical expert to evaluate the severity, frequency, and resulting vocational impact of Cox's seizure disorder.

The Appeals Council remanded this matter after the decision of the first ALJ to, among other things:

> • Obtain additional evidence concerning the claimant's seizure disorder in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 404.1512-1513 and 416.912-913).   The additional evidence may include, if warranted and available, a consultative physical examination and medical source statements about what the claimant can still do despite the impairment.

> • If warranted, obtain evidence from a medical expert to clarify whether the claimant's impairment meets or equals the severity of an impairment listed in Appendix 1, Subpart P, Regulations No. 4 (20 CFR 404.1527(f) and 416.927(f) and Social Security Ruling 96-6p).

(Tr. 132.)

A second administrative hearing was held on October 31, 2012.   (Tr. 32-73.)   Prior to this hearing, Cox submitted additional medical evidence from treating neurologist Dr. Applegate. (Tr. 11, 529-68.)   Cox was present in person at the hearing, and was represented by counsel.   (Tr. 34.)   At the end of the hearing, the ALJ indicated he would leave the record open for thirty days to give Cox the opportunity to submit additional medical evidence.   (Tr. 69.)   The ALJ specifically

noted that he would like Cox to obtain additional evidence from Dr. Applegate.  *Id.*   Cox

submitted an updated medical opinion from Dr. Applegate.   (Tr. 576-82.)

In his decision, the ALJ addresses the Appeals Council's directive regarding developing

the record as follows:

> In accordance with the mandate of the Appeals Council, the claimant's representative has
> submitted additional medical evidence from the claimant's treating neurologist (Ex. 18F;
> 19F; 20F; 21F; 22F).   At the hearing, the claimant indicated that there was additional
> evidence outstanding that needed to be submitted.   I left the record open for the
> submission of this evidence.   The claimant [submitted] progress notes from the treating
> neurologist, but these records were duplicate of other evidence in the record.   However, I
> admitted these records as Exhibit 23F.   The claimant also submitted an updated medical
> opinion from the treating source, marked as Exhibit 24F.   These additional exhibits have
> been made a part of the record.   Because these additional records accurately detail the
> claimant's attempts at treatment throughout the entire relevant period, a consultative
> examination is not warranted by the expanded record.
>
> I find no basis in the record for a medical expert.   The onset of the claimant's disability is
> not in question.   The nature and scope of his impairments is clearly defined and there is no
> doubt as to the diagnosis of those impairments.   Furthermore, the record clearly
> establishes the frequency, intensity, and duration of his symptoms.   Thus clarification
> from a medical expert is not warranted by the expanded record.

(Tr. 11.)

The relevant new evidence submitted by Cox after the hearing includes a "Seizures

Residual Functional Capacity Questionnaire (with onset)" completed by Dr. Applegate on

November 28, 2012.   (Tr. 576-79.)   In this questionnaire, Dr. Applegate states that she has been

seeing Cox approximately every three months since July 20, 2009 for diagnoses of "generalized

epilepsy, convulsive and nonconvulsive, severe and intractable."   (Tr. 576.)   Dr. Applegate

describes Cox's seizures as "staring spells with jerks (myoclonic)[2]" and "grand mal."   *Id.*   With

regard to the frequency of Cox's seizures, Dr. Applegate indicates that Cox has "many" seizures a

month and "too numerous to count" per week.   *Id.*   Dr. Applegate states that Cox's last three

---

[2]A seizure characterized by sudden, brief contractions of muscle fibers, muscles, or groups of
muscles of variable topography (axial, proximal, or distal limb).   *Stedman's* at 1744.

seizures occurred as follows: May 27, 2012 (grand mal); October 22, 2012 (myoclonic); and October 30, 2012 (myoclonic). *Id.* She stated that Cox does not have a warning of an impending seizure, and that the grand mal seizures occur more often at night, but he experiences many petit mal[3] seizures during the day. *Id.* Dr. Applegate indicated that Cox experiences the following post-ictal manifestations: confusion, exhaustion, irritability, muscle strain, paranoia, severe tongue lacerations, and bruising. (Tr. 577.) Dr. Applegate states that Cox "cannot function, unable to perform ADL" after experiencing a seizure. *Id.* Dr. Applegate found that Cox is unable to work at heights, unable to work with power machines, unable to operate a motor vehicle, and cannot take a bus alone. (Tr. 578.) Dr. Applegate also indicated that Cox suffers from severe bipolar disorder, and has "angry outbursts." *Id.* Dr. Applegate found that Cox will need to take unscheduled breaks hourly because he is impulsive and unpredictable. *Id.* She stated that Cox is incapable of even "low stress" jobs because he is "mentally impaired, has impulse control problems and cannot keep to a schedule." *Id.* Dr. Applegate found that Cox would be absent from work as a result of his impairments more than four days a month. *Id.* She indicated that the symptoms and limitations found in her questionnaire were present since August 2008. (Tr. 579.) Dr. Applegate also completed a form in which she expressed the opinion that Cox met Listings 11.02 and 11.03. (Tr. 580-82.)

The ALJ indicated that he was according "no weight" to Dr. Applegate's most recent opinions. He explained as follows:

> First, Dr. Applegate's own progress notes do not support the frequency of seizures noted in her opinion. As noted above, she makes no mention of petit mal seizures in her progress notes (Ex. 12F/8-9; 14F; 18F; 23F). I also note that her last progress note is dated July 2012. Accordingly, it is unclear how she obtained information that the claimant had seizures on October 30, 2012 and October 22, 2012. However, at the claimant's hearing,

---

[3]A term for a cerebral seizure not manifested by tonic-clonic movements (i.e., grand mal). *Stedman's* at 1744.

held on October 31, 2012, he indicated that his last grand mal seizure was in May 2012, but he did not specifically identify seizure activity the day before or even 10 days before. Surely if the claimant had two seizures the week before his hearing, including the day before his hearing, he would have testified as such. Accordingly, I find that the record, including the claimant's hearing testimony, does not support the data relied upon by Dr. Applegate in making this opinion. Therefore, this opinion is given no weight.

(Tr. 21.)

As an initial matter, Cox concedes that his grand mal, or tonic clonic, seizures are under better control with medication. At the October 31, 2012 hearing, Cox testified that his last grand mal seizure occurred in May of 2012; and the last seizure prior to that occurred in December of 2011. (Tr. 37.) Cox testified that his medication regimen of Keppra[4] and Vimpat[5] "controls [the grand mal seizures] mostly." (Tr. 37.) The medical records substantiate Cox's testimony regarding the frequency of his grand mal seizures. (Tr. 570.) Thus, the record is fully developed regarding the frequency and severity of Cox's grand mal seizures.[6]

At issue in this case is the frequency of Cox's petit mal seizures.[7] Cox argues that the ALJ erred in according no weight to Dr. Applegate's opinions, and that the dismissal of Dr. Applegate's opinion created a void in medical evidence regarding the frequency, severity, and vocational impact of Cox's seizures. Cox contends that the ALJ, therefore, erred in failing to obtain the opinion of a medical expert or otherwise develop the record. The undersigned agrees.

"An ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a

---

[4]Keppra is an antiepileptic drug indicated for the treatment of myoclonic and generalized tonic-clonic seizures. *See Physician's Desk Reference ("PDR")*, 3133 (63rd Ed. 2009).
[5]Vimpat is an antiepileptic drug indicated for the prevention and control of seizures. *See WebMD*, http://webmd.com/drugs (last visited June 16, 2015).
[6]In addition, although the ALJ found that Cox also suffers from a mood disorder, which is severe, Cox does not challenge the ALJ's findings regarding his mental impairment.
[7]The terms petit mal and myoclonic appear to be used interchangeably throughout the record when referring to Cox's nonconvulsive seizures. For clarity, the Court will refer to these seizures as petit mal.

treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Wildman v. Astrue,* 596 F.3d 959, 964 (8th Cir. 2010) (alteration in original) (internal quotation omitted). Moreover, "[a]n ALJ is entitled to give less weight to the opinion of a treating doctor where the doctor's opinion is based largely on the plaintiff's subjective complaints rather than on objective medical evidence." *Rosa v. Astrue*, 708 F. Supp. 2d 941, 950 (E.D. Mo. 2010). *See also Davis v. Shalala*, 31 F.3d 753, 756 (8th Cir. 1994); *Loving v. Dep't Health & Human Serv.*, 16 F.3d 967, 971 (8th Cir. 1994). An ALJ may not substitute his own opinions for the opinions of medical professionals. *Ness v. Sullivan,* 904 F.2d 432, 435 (8th Cir. 1990). *See also Pate-Fires,* 564 F.3d at 946–47 (ALJs may not "play doctor"). However, an ALJ "need not adopt the opinion of a physician on the ultimate issue of a claimant's ability to engage in substantial gainful employment." *Qualls v. Apfel,* 158 F.3d 425, 428 (8th Cir. 1998) (internal quotations and citations omitted). Ultimately, the ALJ must "give good reasons" to explain the weight given the treating physician's opinion. 20 C.F.R. § 404.1527(c)(2).

In support of his decision to accord no weight to Dr. Applegate's opinions, the ALJ first noted that Dr. Applegate's opinions regarding the frequency of Cox's seizures was not supported by her own treatment notes, which do not even mention petit mal seizures. Contrary to the ALJ's statement, Dr. Applegate's treatment notes do reflect a diagnosis of myoclonic seizures. At one of Cox's first visits with Dr. Applegate, on August 25, 2009, Dr. Applegate noted that Cox had had "three myoclonic seizures with loss of postural tone" the day after starting Depakote.[8] (Tr. 508.) She stated that Cox "has morning time jerks as well as generalized tonic clonic seizures." *Id.* The other medical evidence also supports the presence of the myoclonic seizures. Cox was first diagnosed with seizure disorder in August 2008, after presenting to the emergency room with

---

[8]Depakote is indicated for the treatment of complex partial seizures and simple and complex absence seizures; and manic or mixed episodes associated with bipolar disorder. *See PDR* at 423.

complaints of "blacking out" every one to two days for one year. (Tr. 426-29.) Cox also reported episodes of "staring into space." (Tr. 426.) Cox was started on Dilantin[9] at that time. *Id.* Thus, the medical record clearly reflects that Cox suffers from petit mal seizures.

The ALJ is correct that Cox's petit mal seizures are not well documented in Dr. Applegate's treatment notes. Dr. Applegate authored an opinion dated February 9, 2010, in which she states that Cox has intractable generalized epilepsy, and that the seizures occur one to three times a week. (Tr. 464.) Dr. Applegate makes no references to the petit mal seizures, and it is unclear from her statement whether those seizures were considered. (Tr. 464.) On May 30, 2010, Dr. Applegate indicated that Cox had undergone an EEG, which revealed seizure activity. (Tr. 520.) Dr. Applegate stated that Cox was having "multiple non-convulsive seizures per day while he was on Depakote monotherapy. Addition of Keppra caused elimination of the myoclonic episodes and the non-convulsive absence seizures." (Tr. 519.) On July 13, 2011, Dr. Applegate noted that Cox had recently been hospitalized for seizure episodes after a deliberate drug overdose. (Tr. 529.) Dr. Applegate continued Cox on his regimen of Vimpat and Keppra. *Id.*

Dr. Applegate's most recent treatment notes are silent as to the frequency of Cox's petit mal seizures. On January 12, 2012, Dr. Applegate stated in a note intended for his next neurologist, "[t]his is a gentleman with poorly controlled seizures in the past, largely due to medical non-compliance. He is doing fine now." (Tr. 563.) Dr. Applegate also stated that Cox "has not had any seizures." (Tr. 562.) She described Cox's epilepsy as "not intractable." *Id.* However, Dr. Applegate's next treatment note, dated July 12, 2012, lists Cox's problem as "intractable epilepsy, generalized and myoclonic." (Tr. 560.) Dr. Applegate indicated that Cox

---

[9]Dilantin is an antiepileptic drug indicated for the prevention and control of seizures. *See WebMD*, http://webmd.com/drugs (last visited June 16, 2015).

had a generalized tonic-clonic seizure on May 27, 2012, after missing a dosage of his medication. *Id.* Dr. Applegate stated that Cox has "a history of difficult to manage epilepsy with generalized tonic-clonic seizures, myoclonic seizures, and atonic[10] seizures in the past." *Id.* Dr. Applegate noted no abnormalities on neurological examination. (Tr. 561.) Dr. Applegate diagnosed Cox with "difficult to manage generalized epilepsy." *Id.* She noted that Cox's "seizures are better controlled on current combination, but he remains intractable." *Id.*

The ALJ expressed confusion regarding Dr. Applegate's statement in her July 2012 treatment notes that Cox's seizures were better controlled, yet he was intractable. (Tr. 39.) When Cox's attorney attempted to explain that Cox still experiences frequent petit mal seizures, the ALJ inquired of Cox's attorney why Dr. Applegate did not mention Cox's petit mal seizures in her July 2012 note. *Id.* It was this confusion that caused Dr. Applegate to author an updated opinion, in which she indicates that Cox experiences both grand mal seizures and myoclonic seizures. (Tr. 576-79.)

The ALJ accurately points out that it is unclear how Dr. Applegate obtained the information about Cox's most recent seizure described in her November 2012 opinion, when Dr. Applegate's last progress note is dated July 2012. Dr. Applegate's November 28, 2012 opinion also appears internally inconsistent, as she states that Cox has "too many seizures to count" per week, yet she also indicates that Cox's last grand mal seizure occurred on May 27, 2012 and his last two myoclonic seizures occurred on October 22, 2012 and October 30, 2012. (Tr. 576.) In addition, the ALJ notes (Tr. 20 ) that Cox's own seizure log (Tr. 377) does not support the frequency of petit mal seizures found by Dr. Applegate. Cox's seizure log, which covers the time period of October 2010 through May 2012, documents only sporadic episodes of blackouts,

---

[10]A seizure characterized by sudden, brief (1-2 second) loss of muscle tone, involving postural muscles. *Stedman's* at 1744.

"twitches," and "jerks," which presumably refer to myoclonic seizures. (Tr. 377.) For example, Cox recorded "2 blackouts" on November 11, 2010; "2 blackout[s]/twitches" on November 18, 2010; "blackouts-several of the 'jerks' and twitches recorded on video" on January 20, 2011; "two blackouts, fell into a chair, and in the hallway" on March 23, 2011; and "twitches" on July 8, 2011 and April 13, 2012. (Tr. 377.) Cox does not specifically mention any "staring spells," as he described during the hearing, and it is unclear whether he intended to include these spells in his log.

The above review of Dr. Applegate's treatment notes, Cox's seizure log, and Dr. Applegate's November 2012 opinion reveals inconsistencies and ambiguities regarding the frequency of Cox's petit mal seizures. Cox's petit mal seizures are not clearly documented in the record. The fact that these seizures are described in many different ways by both Dr. Applegate and Cox causes further confusion.

The ALJ next discredits Dr. Applegate's opinion on the basis that it is inconsistent with Cox's testimony at the administrative hearing. The ALJ notes that Dr. Applegate's opinion indicates that Cox's last myoclonic seizure occurred on October 30, 2012, which was the day prior to the hearing. The ALJ states that Cox did not "specifically identify seizure activity the day before or even 10 days before. Surely if the claimant had two seizures the week before his hearing, including the day before his hearing, he would have testified as such." (Tr. 21.) The ALJ's statement mischaracterizes Cox's testimony.

Cox testified that, while his medication provided good control of his grand mal seizures, he still experiences "little blackouts, my atonic seizures." (Tr. 37.) Upon questioning by his attorney, Cox stated that he experiences episodes of twitching and staring spells "every few days." (Tr. 38.) Later in the hearing, the ALJ asked Cox how often he was having seizures at the time of

the hearing. (Tr. 40.) Cox responded: "I still have my petit mal seizures, but I'm not having my grand mal seizures as much." *Id.* Cox further testified that he first started having petit mal seizures in kindergarten, although they were not diagnosed as such at that time. (Tr. 46.) He explained that he frequently got in trouble in school for not paying attention when he was having a "staring" seizure. (Tr. 46-47.) Cox testified that he experienced these types of seizures "every few days or so, at least." (Tr. 47.) He stated that the frequency of the petit mal seizures has not changed after his medication was adjusted. *Id.*

Cox's mother, Tonja Cox, also testified at the hearing. Ms. Cox testified that her son's grand mal seizures have improved over the past year, but his "staring spells" and "twitching spells" have not and still occur "nearly every day." (Tr. 56.) Ms. Cox testified that the staring spells can occur "15, 20 times a day," and last between thirty seconds and two to three minutes. *Id.* She explained that, during a staring spell, her son does not respond when she speaks to him. *Id.* Ms. Cox stated that the staring spells began when her son was in kindergarten. *Id.*

Cox clearly testified at the hearing on two different occasions that he experienced petit mal episodes "every few days." (Tr. 38, 47.) Cox's mother testified consistent with her son's testimony that Cox's "staring spells" and "twitching spells" occur "nearly every day." (Tr. 56.) While Cox did not specifically state that he had had a petit mal seizure the day prior to the hearing, the ALJ did not ask the date on which he had his last petit mal seizure. Dr. Applegate's statement that Cox had a seizure on October 30, 2012 is consistent with Cox's testimony that he has seizures every few days. The ALJ erred in discrediting Dr. Applegate's opinion on the basis that it was inconsistent with Cox's testimony.

In sum, the ALJ pointed out some inconsistencies between Dr. Applegate's opinions and her treatment notes, which constitute a valid reason for discrediting Dr. Applegate's opinions.

The ALJ, however, also discredited Dr. Applegate's opinion based on the erroneous finding that it was inconsistent with Cox's testimony. The ALJ also stated that Dr. Applegate's records were silent as to petit mal seizures when Dr. Applegate clearly diagnosed Cox with myoclonic seizures. Dr. Applegate is Cox's treating neurologist, she saw Cox on a regular basis, and she is the only physician who provided an opinion regarding the severity and frequency of Cox's seizures. As such, the ALJ erred in according no weight to Dr. Applegate's opinions. The inconsistencies set out by the ALJ simply reinforce the need for clarification on these issues, either from Dr. Applegate, or from a medical expert.

After the dismissal of Dr. Applegate's opinion, there is no remaining evidence regarding the frequency of Cox's petit mal seizures or how they affect his ability to work. Significantly, the vocational expert testified at the hearing that an individual who was off task ten to fifteen percent of the work day due to a staring spell associated with a petit mal seizure would be unable to maintain competitive employment. (Tr. 69.) The ALJ did not incorporate any limitations resulting from Cox's petit mal seizures when the record documents that Cox experiences such seizures. Thus, the ALJ's finding that the record "clearly establishes the frequency, intensity, and duration of his symptoms" such that "clarification from a medical expert is not warranted by the expanded record" is not supported by substantial evidence. (Tr. 11.)

The Court finds that the ALJ failed to comply with the Appeals Council's directives and did not fully develop the record in this case. *See Snead v. Barnhart*, 360 F.3d 834, 839 (8th Cir. 2004) ("Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case.") *See also Vires v. Colvin*, No. 1:11CV212, 2013WL1408641, * 15 (E.D. Mo. Apr. 8, 2013) (finding remand appropriate and necessary where the ALJ failed to comply with the Appeals Council's directives). The Court

further finds that "[b]ecause the record was incomplete with respect to such impairments, the ALJ's resulting credibility and RFC determinations were not supported by substantial evidence on the record as a whole." *Vires*, 2013WL1408641 at * 16.   As a result, this matter will be reversed and remanded for further development and analysis regarding the nature and frequency of Cox's petit mal seizures and their effect on Cox's ability to work.

## IV.B.  Listing 11.03

Cox also argues that the ALJ erred in not finding that Cox meets or equals Listing 11.03, the epilepsy listing.   Because the matter will be remanded to the Commissioner for further development of the record, the undersigned will address Cox's remaining argument only briefly.

The burden of proof is on the claimant to establish that his impairment meets or equals a listing.   *Soutiea v. Colvin*, 2013 WL 1316028, at *2 (E.D.Mo. Mar. 29, 2013) (citing *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004)).   The specified criteria for Listing 11.03 are as follows:

> 11.03 Epilepsy—nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

20 C.F.R. Part 404, Subpart P. Appendix 1, § 11.03.   An impairment cannot meet the criteria based on a diagnosis alone. 20 C.F.R. § 416.925(d).   To meet the requirement of a Listing, the medically determinable impairment must meet all of the criteria of the Listing.   *Id; Baker v. Colvin*, 2013 WL 5770600, at *4 (E.D. Mo. Oct. 24, 2013).   "An impairment that manifests only some of these criteria, no matter how severely, does not qualify."   *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

The ALJ considered Listing 11.03, but found that Cox did not meet or equal the listing

because "there is no evidence that the claimant has weekly petit mal seizures despite prescribed treatment as indicated in Listing 11.03." (Tr. 15.) The ALJ stated that Cox's "accounts of the frequency of his seizures are unreliable and the record as a whole does not reflect seizure activity of a Listing level." *Id.* The ALJ acknowledged that Dr. Applegate provided opinions that Cox's condition meets both Listing 11.02 (the listing for grand mal seizures), and 11.03, but stated that these opinions "are not given significant or controlling weight for the reasons detailed below." *Id.*

The undersigned has found that the ALJ erred in according no weight to Dr. Applegate's opinions and in failing to develop the record regarding the nature and frequency of Cox's petit mal seizures. The ALJ's finding that Cox does not meet or equal Listing 11.03 is based on his dismissal of Dr. Applegate's opinions and is therefore not supported by substantial evidence. Upon remand, the ALJ should reassess whether Cox meets or equals Listing 11.03.

## V. Conclusion

For the reasons discussed above, the Commissioner's decision is not based upon substantial evidence on the record as a whole and the cause is therefore remanded to the Commissioner for further consideration in accordance with this Memorandum and Order. Upon remand, the ALJ shall further develop the record by obtaining additional medical evidence regarding the frequency of Cox's seizures, specifically his petit mal seizures, and their effect on his ability to function in the workplace. This additional evidence may include contacting Dr. Applegate to clarify her limitations and restrictions; ordering a consultative examination; and obtaining the testimony of a medical expert. Upon receipt of any additional evidence, the ALJ shall reconsider the record as a whole, reevaluate the credibility of Cox's own description of his symptoms and limitations, reevaluate whether Cox meets or equals Listing 11.03, and, if

necessary, reassess Cox's RFC.

Therefore, for the reasons stated above,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED**, and this cause is **REMANDED** for further proceedings.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

s/Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 2nd day of September, 2015.